McCook *v.* Mumby.

JOHN J. McCOOK and WILLIAM T. LAWSON, trustees, &c.,

*v.*

SPENCER M. MUMBY and MALCOLM CAMPBELL, executors, &c., et al.

[Filed March 16th, 1903.]

A testator, by his will, created a trust fund for the benefit of a son, to whom a life interest therein was given, and empowered the trustees thereof to advance and pay over to such son, in his lifetime, out of said fund, any sum, not exceeding $100,000, at their discretion; and further empowered such son, by his will, made under certain circumstances, to dispose of $150,000 out of said fund to any person he might see fit. The trustees advanced to said son from said fund an amount less than $100,000. The son died under circumstances which rendered applicable the power conferred on him to dispose of $150,000 out of the fund by his will. —*Held*, that upon the true construction of the will of the father, the son's power of disposition was not diminished by the amount previously advanced to him, but extended to the whole amount of the fund remaining in the trust after such advancement, if the same was less than $150,000.

On bill for direction to trustees.

*Mr. John O. H. Pitney,* for the complainants.

*Mr. Charles L. Corbin,* for Adele Mittant Day.

*Mr. Elmer King,* for Spencer M. Mumby and Malcolm Campbell, executors.

*Mr. George Holmes,* for Sarah Lord McCormick et al.

*Mr. John E. Miller,* for Susan De Forest Day Parker.

*Mr. William A. Barkalow,* guardian *ad litem* of Mildred Day McCormick, an infant.

MAGIE, CHANCELLOR.

The complainants, John J. McCook and William T. Lawson, as trustees of a trust fund created under the provisions of the last will and testament of Henry Day, late of Morristown, in this state, deceased, and of the codicils thereto (which will and codicils were duly admitted to probate in the county of Morris on January 22d, 1893), by their bill in this cause, seek the direction of this court as to the disposition of the fund thus created, which is now in their hands.

They have made parties defendant to their bill Spencer M. Mumby and Malcolm Campbell, executors and trustees under the will of George Lord Day, deceased; Adele Mittant Day, Susan De Forest Day Parker, Sarah Lord McCormick, Robert Hall McCormick, Henrietta Hamilton McCormick, Elizabeth Day McCormick, Phebe Lord McCormick and Mildred Day McCormick (the last named being an infant) ; and they charge that conflicting claims to the trust funds in their hands have been made by the defendants, which claims conflict by reason of variant constructions of certain of the provisions of the will and codicils of Henry Day, in respect to which constructions the complainants have doubts. They therefore seek a judicial construction thereof and directions for their conduct for their protection.

They called upon the defendants to answer and set up their respective claims.

Answers have been filed by the defendants which, it is sufficient to say, do indicate conflicting claims to the trust fund in the hands of complainants, dependent upon conflicting constructions of the will and codicils of Henry Day.

The clauses of the will which are thus drawn in question are contained in the sixth item and a portion of the seventh item thereof, which read as follows:

"*Sixth.* The remaining half of my residuary estate, real and personal, and in case my said wife should not survive me, the whole thereof, I direct to be disposed of in the following manner : I direct it to be divided into as many shares as I may leave children me surviving, and children who may then be deceased, leaving issue me surviving. One of these shares I give to be divided equally among the issue of each of my then deceased children *per stirpes* and not *per capita.*

"The other shares I direct my executors to hold each as a separate trust estate, one to the use of each child me surviving during the life of such child, to keep the same invested in securities by them considered good, to receive the rents, profits and income of the same and to pay over the net proceeds of the same to the use of such child half yearly or oftener during his or her life, and upon his or her death, I give the said sum so held for the use of such child to be disposed of as shall be directed by the last will and testament or appointment of any such child, made according to the powers hereinafter named and duly executed, and in default of any such will or appointment, I give said sum to the lawful issue of such child, to be divided among them *per stirpes* and not *per capita*, and in default of any such will, appointment or issue, then to my lawful issue then living, such issue taking *per stirpes* and not *per capita*. And I hereby authorize any such child, last named, to dispose of the share limited to his or her use by will or appointment to or among his or her or my lawful issue, in such shares and upon such legal trusts as each child respectively may direct, and in default of any such issue of such child, then I authorize said child to dispose of one hundred and fifty thousand dollars of said fund held in trust for his or her use to any person or persons or charities he or she may see fit, and the remainder of said fund I give to my lawful issue then living, such issue taking *per stirpes* and not *per capita*.

"The share appropriated to the use of my son George under this clause shall be held by my remaining executrix and executors, but the investments of the same shall be made by and with the consent of my said son.

"*Seventh.* I authorize my executrix and executors, in their discretion, and if they shall think it for the best interest of my son George, at any time and from time to time, to advance and pay to him any portion of the share above mentioned limited to his use; not exceeding in all the sum of one hundred thousand dollars."

In connection with these provisions, there is to be considered the first clause of the second codicil, which reads as follows:

"*First.* I do hereby appoint as trustee for the fund to be set apart for the use of my son, George Lord Day, under the sixth clause of my said will, Daniel Lord and John J. McCook, with all the powers and duties in said will and codicil thereto mentioned.

"I hereby revoke the appointment of other trustees for said fund in said will and codicil mentioned;"

and the sixth item of the same codicil, which reads as follows:

"*Sixth.* Inasmuch as the executrix and the executors of my said will will not in every case be trustees of each trust fund in said will mentioned, wherever in my said will I have given any power or authority to my executrix or executors, by name, over any of the trust funds, it is to be understood that that authority shall apply to the respective trustees of such trust fund after said funds are appropriated and set apart, and the power of the executors over the same shall from that time cease. This shall apply especially to the seventh article of my said will."

The circumstances under which the complainants' relief is sought, as established by the proofs, are the following: The complainant McCook was one of the trustees of the fund set apart for the testator's son, George Lord Day, appointed by the first item of the second codicil. The complainant William T. Lawson has been appointed a trustee, with the complainant McCook, of the same fund, in conformity with the provisions contained in the said will and codicil. George Lord Day has died testate, and complainants have duly stated and settled their account as trustees in the orphans court of Morris county, and there has been found to be in their hands $119,636.20, which amount that court has directed them to pay over according to the terms of their trust.

During the lifetime of George Lord Day the trustees of this fund paid to him out of the same in all the sum of $96,813, which payments were made pursuant to the authority conferred by the provisions of the seventh item of the will and the sixth item of the second codicil.

George Lord Day died without leaving children, but leaving a widow, Adele Mittant Day. By his will he bequeathed certain legacies, and then made therein the following provision:

"All other property of which I shall be seized or possessed at the time of my death, whether such property be real or personal, and whether it shall be mine in absolute ownership, or held in trust for my benefit by trustees under the will of my father or of my mother, with powers granted to me to dispose thereof by my will, I give (intending hereby to exercise the said powers of disposition by my will) to my executors hereinafter named (acting as trustees), to have and to hold unto them, their successor or successors upon the following trusts, viz.:

"To invest the same and keep the same invested as a trust fund, and to hold the capital of said trust fund during the life of my wife, Adele Mittant Day, and to pay over to her the net income thereof (after deduction of all necessary and proper expenses of said trust) in equal quarterly or semi-annual payments, according as my said wife shall desire; and upon the death of my said wife, to pay over the capital of said trust fund, in equal shares, to any child or children of mine, and any child or children of any deceased child or children of mine, who shall be living at the decease of my said wife, such children and grandchildren to take *per stirpes* and not *per capita;* and if but one child of mine and no grandchildren, or but one grandchild and no children, shall survive my said wife, then, upon the death of my said wife, to pay over the entire capital of said trust fund to such child or grandchild.

McCook *v.* Mumby.

"Should no child or children, grandchild or grandchildren of mine survive my said wife, then, upon the death of my said wife, I give the entire capital of said trust fund to the issue then living of my father, Henry Day, such issue to take *per stirpes* and not *per capita*.

    *    *     *     *     *     *     *     *     *     *

"Furthermore, should the above disposition of the property bequeathed in trust for my benefit by the will of my father be held to be invalid as an exercise of the power of appointment by my will, granted to me by the said will of my father, in respect of said property, then, and in that case, I make no alternative disposition of said property bequeathed in trust for my benefit by the will of my said father, with power to me to dispose thereof by my will; hoping that the person or persons who, upon my failure to exercise said power, will, according to the terms of the said will of my father, be entitled to said property, will be able and willing to find means of carrying out my wishes in respect thereto as hereinabove expressed."

It further appears that Henry Day had four children—Elizabeth, who married one Inglis; Sarah McCormick, one of the defendants; George Lord Day, deceased, and Susan De Forest Day Parker, also one of the defendants. Mrs. Inglis died intestate, in the lifetime of Henry Day, without issue. Mrs. McCormick has five children; four of them are adults and one, named Mildred, is a minor. These children are also defendants. Mrs. Parker is now living, and has no issue.

The contention on the part of the executors and widow of George Lord Day is that, by the will of Henry Day, a power of appointment was conferred upon George Lord Day extending to $150,000 of the fund, and that the will of George Lord Day duly executed that power, and took effect upon the whole of the fund in their hands, which was less in amount than the sum which he was empowered to appoint.

The contention of some of the defendants, and particularly of the infant, answering by her guardian *ad litem,* is that no power of appointment was conferred on George Lord Day by the will of Henry Day, but if such a power was conferred, it extended only to so much of the $150,000 named therein as had not been advanced and paid over out of the fund to him in his lifetime, and that, in case the power to appoint is discoverable, it extended only to so much of the fund in the hands of the complainants as remained after deducting the $96,813 previously

advanced and paid to him. Under this construction it is further contended that, by the will of Henry Day, so much of the fund as was not properly disposed of by the appointment of George Lord Day is to be distributed and paid by the trustees to the issue of Henry Day, and that the living children of Mrs. McCormick are entitled to share therein.

The first question to be considered relates to the power of appointment conferred on George Lord Day, and its extent.

Under the provisions of the will of Henry Day it seems to me that there can be no doubt that the testator conferred upon George Lord Day, his son, a power of appointment in connection with the fund in which he had an interest. The provisions of the sixth item of the will fall naturally into four categories. The first provides for the disposition of the fund in case George died leaving no will and leaving issue. The second for the case of George dying leaving no will and leaving no issue. The third provides that if George died leaving issue he could dispose of the entire fund by his will among the issue of Henry Day, including his own issue. And lastly, it provides for the case of George dying leaving no issue, in which case power is conferred to dispose of $150,000, out of this fund, by his will, "to any person or persons or charities that he should see fit."

The whole clause conforms, in substance, to the usual testamentary description of powers of appointment. The testator, after indicating the right of the children having a life interest in the fund, bequeaths the sum held for the use of the child, to be disposed of as directed by such child's last will and testament or appointment, under the powers conferred by the will. In case George had left living issue, he was empowered by will to appoint to whom of the issue of Henry Day, including his own issue, the fund should go. In case George left no issue, he was, in like manner, empowered to appoint, by will, to whom $150,000 of the fund should go, and the testator disposed of any excess that might remain in the fund.

The facts proved establish the right of George Lord Day to make the appointment under the last category of the provisions of the sixth clause of Henry Day's will. He died leaving no child. He was therefore empowered, by testamentary disposi-

tion, to appoint $150,000 out of this trust fund, to any person, at his discretion. His will seems to have been executed with all the formalities required to make a valid testamentary disposition of his property, and it executed the power of appointment. It probably would have been a sufficient appointment if it had failed to indicate an intent to exercise the power conferred on him in that respect. But there is an express declaration in his will of an intent to make the appointment under the power conferred upon him by the will of his father, and although he expresses some doubt whether his appointment can be effectuated, his doubt can have no effect upon the judgment of the court, if, in fact, his will, on a proper construction of the provisions of the will of Henry Day, was a valid appointment by George Lord Day. On that subject I have no doubt, and find in the circumstances nothing to indicate why George Lord Day expressed a doubt on this subject in his will, though it may be conjectured that he had in mind a possibility of issue being born to him and living at the time of his death. In such case, the provisions of his will would have been, so far as the interest of his wife is concerned, ineffective.

Upon the execution of a power of appointment of this sort it is well-settled law that the appointee takes, not from the person who appoints, but from the original donor or testator, so that the interest of any person in this fund acquired by the appointment of George Lord Day was an interest which emanated from the original testator, Henry Day, George being only the indicator pointing out to whom the testator's bounty should go. *Leggett* v. *Doremus, 10 C. E. Gr. 122.*

The provision contained in the seventh item of Henry Day's will giving authority to the executors, at their discretion and if they deemed it for the best interests of his son, George, to advance and pay to him any portion of the share limited to his use, not exceeding $100,000, an authority afterward extended, by the sixth item of the second codicil, to the trustees of the fund, indicates, in my judgment, a plain intent on the part of the testator to withdraw from the fund so much as was advanced and paid to George, which sum so paid became his property, and to leave the remainder of the fund under the trust. When

therefore, the testator gives authority to any child to appoint out of the trust fund limited to his use the sum of $150,000 under certain circumstances, the trustees must recognize the interest of the appointee in the fund remaining in their hands after advancement and payment of the permitted sums to the child having a life interest. It results that the fund in the hands of the trustees, being less than the amount which George Lord Day was empowered to dispose of by appointment, is wholly disposed of by the appointment contained in his will, and a decree must be made giving this construction to the will for the benefit of the trustees thereunder.

This result renders it unnecessary to give any attention to the further question asked respecting the persons to whom the residuum of this fund, if there were any, would pass under the provisions of the will of Henry Day.